IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| ROBERT R. OLIG, | Cause No.  CV 13-15-BLG-DLC-RKS |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| XANTERRA PARKS & RESORTS, INC., a Delaware corporation, ADDIE WICKHAM, and John Does 1-5, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Robert Olig brings this action for wrongful discharge, intentional infliction of emotional distress, and punitive damages against his former employer Defendant Xanterra Parks & Resorts, Inc., the concessionaire operating in Yellowstone National Park.  Also named as a Defendant is Olig's supervisor, Xanterra employee Addie Wickham.  Olig initially filed this action in Montana's Sixth Judicial District Court, Park County, but Defendants removed to this Court under the federal enclave doctrine, asserting that Olig's causes of action arise from his employment within the federal enclave of Yellowstone National Park. CD 1.

1

Pending before the Court are Olig's motion to remand and Defendants' motion to dismiss, which has been converted to a motion for summary judgment.[1] CD 37.  The briefing has narrowed the issues significantly.  Defendants argue that because Olig was employed in Yellowstone National Park, the federal enclave doctrine applies, granting the Court federal question jurisdiction and limiting the applicable state law to laws in effect at the time the park was created.  Defendants further argue that because Montana law at that time did not recognize claims like those at issue here, Olig fails to allege cognizable claims for relief.

Olig concedes that his claims fail if the federal enclave doctrine applies because he does not attempt to argue that his claims would be cognizable under Montana law in existence at the time Yellowstone was created.  Rather, Olig argues the federal enclave doctrine is inapplicable because he was required to perform some services for Xanterra outside the boundaries of Yellowstone National Park.  He therefore argues there is no basis for federal jurisdiction and this matter must be remanded to state court.  Accordingly, the only issue to be decided is whether the federal enclave doctrine applies.

---

[1]Defendants have also moved the Court to take judicial notice of certain facts to be considered with their motion to dismiss (CD 8), but since the Court has accepted the parties' invitation to consider materials outside the pleadings and convert the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment (CD 37), the motion for judicial notice is moot.

For the following reasons, the Court concludes that it does apply.  The Court therefore recommends[2] Olig's motion to remand (CD 15) be denied and Xanterra's motion to dismiss (CD 6) be converted into a Rule 56 Fed.R.Civ. P. motion for summary judgment and granted.

## II.   OLIG'S MOTION TO REMAND[3]

Generally, an action is removable to federal court only if it could have been brought there originally.  28 U.S.C. § 1441(a).  Xanterra's Notice of Removal asserts federal question jurisdiction because Olig's causes of actions arose from his employment within the federal enclave of Yellowstone National Park.  CD 4, ¶¶ 9-10.  Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006)("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'").  "Personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction."  Akin v. Ashland Chemical Co., 156 F.3d 1030,

---

[2] The case was originally assigned to the U.S. District Judge Richard Cebull, but was transferred to Chief U.S. District Judge Dana Christensen upon Judge Cebull's retirement.  Chief Judge Christensen has referred the case to this Court as provided by Local Rule of Procedure 73.1(a)(1).

[3] Federal courts must establish their jurisdiction before proceeding to the merits of the case.  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-98 (1998).  Accordingly, since Olig's motion to remand challenges this court's jurisdiction over his claims, the motion to remand must be decided first.

1034 (10th Cir. 1998); <u>Fung v. Abex Corp.</u>, 816 F.Supp. 569, 571 (N.D. Cal.

1992) (failing to plead that exposure to asbestos occurred in an enclave does not

shield plaintiff from the effect of the enclave doctrine).

Removals based on federal question jurisdiction are governed by the general

removal statute, in this case 28 U.S.C. § 1441(a). The general removal statute is to

be strictly construed, and any doubts as to the right of removal must be resolved in

favor of remanding to state court. <u>Durham</u>, 445 F.3d at 1252, <u>citing Gaus v.

Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir.1992) (per curiam). The strong

presumption against removal means that the defendant always bears the burden of

proving removal was proper. <u>Gaus</u>, 980 F.2d at 566. In ruling on a motion to

remand, district courts may consider evidence outside the pleadings, such as

affidavits, documents, or even a limited evidentiary hearing, to resolve disputed

jurisdictional facts. <u>Community Ins. Co. v. Rowe</u>, 85 F.Supp.2d 800, 804 (S.D.

Ohio 1999).

Removals under 28 U.S.C. § 1441 are subject to the well-pleaded complaint

rule. <u>Durham</u>, 445 F.3d at 1253. The well-pleaded complaint rule provides that

federal jurisdiction exists only when a federal question is presented on the face of

the plaintiff's properly pleaded complaint. <u>California v. United States</u>, 215 F.3d

1005, 1014 (9th Cir. 2000). Courts consider what appears in the plaintiff's

statement of his claim without regard to anything alleged to avoid federal defenses it anticipates a defendant may assert, even the defense of federal preemption.  Id.; see also Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1129-30 (9th Cir. 1992).  Assertion of a federal defense does not grant a right of removal even where the federal defense is anticipated in the complaint and both parties concede it is the only issue in the case.  Tingey, 953 F.3d at 1130 citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987).  Under the well-pleaded complaint rule, a defendant asserting that the complaint is barred because the cause of action is barred by federal preemption does not have a right of removal and must raise the defense in state court.  Tingey, 953 F.3d at 1130; see also Berger Levee Dist., Franklin County, Mo. v. U.S., 128 F.3d 679, 681 (8th Cir. 1997) (U.S. Government's assertion of Supremacy Clause defense to state tax collection claim does not confer federal question jurisdiction).

Assertion of the federal enclave doctrine is not considered a defense for purposes of the well-pleaded complaint rule because removal may still be appropriate when "federal law not only displaces state law, but also confers a federal remedy on the plaintiffs or compels them to rely, explicitly or implicitly, on federal propositions."  Harper v. San Diego Transit Corp., 764 F.2d 663, 666 (9th Cir. 1985); see also Swords to Plowshares v. Kemp, 423 F.Supp.1031, 1033

5

(N.D. Cal. 2005) (an action arises under federal law within the meaning of § 1331 if the "plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law"), citing City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164 (1995).  Related to this rule is the artful pleading doctrine, a corollary to the well-pleaded complaint rule, providing that while the plaintiff can forego federal causes of action in order to avoid removal, a plaintiff cannot avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim.  Harper, 764 F.2d at 666-67; Lippitt v. Raymond James Fin. Serv., 340 F.3d 1033, 1041 (9th Cir.2003).

Olig's Amended Complaint does not mention Yellowstone National Park, so it may have been artfully pleaded in an attempt to avoid the federal enclave doctrine.  Defendants are correct that tort claims brought by employees of contractors operating on federal enclaves are subject to the federal enclave doctrine.  Stiefel v. Bechtel Corp., 497 F.Supp.2d 1138, 1148 (N.D. Cal. 2007), quoting Taylor v. Lockheed Martin Corp., 78 Cal.App. 4th 472, 481 (2000).  And Yellowstone National Park is a federal enclave.  Yellowstone Park Transp. Co. v. Gallatin County, 31 F.2d 644, 645 (9th Cir. 1929), citing 1891 Mont. Laws 262; Mont. Code Ann. § 2-1-207 (2011).

Olig argues the federal enclave doctrine is inapplicable because Xanterra

directed him to perform limited work outside the boundaries of the enclave at properties it managed in Gardiner and West Yellowstone, Montana, as well as in Livingston, Great Falls, Butte, Three Forks, Bozeman, and Billings, Montana. CD 38-1, Aff. Of Robert Olig (July 3, 2013)[4]. Olig avers that in a typical year approximately 15% of his time was spent performing services for Xanterra outside the boundaries of Yellowstone. CD 38, ¶ 11. Olig also avers–without any legal authority for its relevance–that he worked for Xanterra in the State of Montana, as evidenced by pay stubs showing that Xanterra withheld funds from his paycheck for payment of Montana state income taxes. CD 38, ¶ 13.

The weight of the case law, however, does not support Olig's argument that performing some work outside the enclave at the direction of the employer renders the federal enclave doctrine inapplicable. And Olig supplies no authority for the proposition that payment of state income taxes obviates the doctrine. Title 4 U.S.C. § 106(a) authorizes states to tax income earned from services performed within federal enclaves and the Court has found no authority linking this practice to the federal enclave doctrine.

---

[4]Olig filed this second affidavit in response to this Court's June 21, 2013 Order notifying the parties that Xanterra's Rule 12(b) motion would be converted to a Rule 56 motion and that they should submit any additional pertinent material within 12 days. Olig's second affidavit contained only one additional averment (¶ 13) and one additional exhibit (Ex. B) beyond his initial February 26, 2013 affidavit. CD 14-1.

7

The issue is whether Olig's claims arose on the federal enclave.  Durham, 444 F.3d at 1250.  The U.S. District Court for the Northern District of California has recently explained that the "federal enclave doctrine only applies when the locus in which the claim arose is the federal enclave itself."  In re High-Tech Employee Antitrust Litigation, 856 F.Supp.2d 1103, 1125 (N.D.Cal. 2012).  Another court in the Northern District of California looked to where the "substance and consummation of the tort" occurred in determining whether a tort claim arose on a federal enclave.  Totah v. Bies, 2011 WL 1324471, * 2 (N.D.Cal. 2011) (denying motion to remand).  Finally, two other federal district courts in California have applied the enclave doctrine to wrongful termination claims where "all pertinent events occurred" on the enclave.  Stiefel, 497 F.Supp.2d at 1148; Snow v. Bechtel Const. Inc, 647 F.Supp. 1514, 1521 (C.D. Cal. 1986).[5]

Olig argues Stiefel is distinguishable because the wrongful termination plaintiff did not dispute that all of his work was performed on the enclave, but argued the enclave doctrine did not apply because he was at home, off the enclave, when he was terminated.  497 F.Supp.2d at 1147-48.  While that is true, it does not

---

[5]A court in the Northern District of Alabama has even applied the federal enclave doctrine where only some of the events alleged in the complaint occurred on a federal enclave. Corley v. Long–Lewis, Inc., 688 F.Supp.2d 1315, 1336 (N.D.Ala. 2010).

undermine <u>Stiefel</u>'s rule that the federal enclave doctrine applies where all pertinent events occur on the enclave.  497 F.Supp.2d at 1148.

Here, Olig brings claims for wrongful discharge (Counts I and II), intentional infliction of emotional distress (Count III), and punitive damages (also Count III).  CD 5.  Count I alleges that on January 12, 2009 he was wrongfully discharged from his position as "Assistant Parkwide Trades Manager FT" without cause because the claimed reason of job elimination was a pretext, and in retaliation for reporting violations of public policy.  <u>Id.</u>, at ¶¶ 8-10.  Count I further alleges the discharge violated Xanterra's written policy manual.  <u>Id.</u>, at ¶ 12.  Count II alleges he was constructively discharged from the position he was demoted to, "Project Assistant," because his supervisor, Defendant Addie Wickham, created a hostile work environment that was ratified by Xanterra, all in violation of Xanterra's written policies.  <u>Id.</u>, at ¶¶ 16-20.  Count III alleges Defendants "engaged in a course of conduct to humiliate and embarrass Olig in front of his peers" that was intended to cause him severe emotional distress.  <u>Id.</u>, at ¶ 24.  The second Count III alleges Defendants are liable for punitive damages for acting with actual malice.  <u>Id.</u>, ¶27.  Neither the Amended Complaint nor Olig's affidavit (CD 38) allege that any of Defendants' allegedly wrongful conduct occurred outside Yellowstone.

Xanterra's base of operations in Yellowstone is at Mammoth Hot Springs, within the boundaries of the enclave.  Defendant's Statement of Uncontroverted Facts, CD 25, ¶ 3.  At all times relevant to this lawsuit Olig worked for Xanterra's Engineering Department, based within the enclave at Mammoth Hot Springs.  Id., at ¶¶ 5, 13, 16, 20.  During Olig's time as Assistant Parkwide Trades Manager, his office was located at Mammoth Hot Springs, along with his three supervisors.  Id., at ¶¶ 13, 14.  When Olig was terminated from his job as Assistant Parkwide Trades Manager, he was notified both orally and in writing at the Engineering Department at Mammoth Hot Springs.  Id., at ¶ 19.  He accepted his new position as Project Assistant there as well.  Id., at ¶ 21.  During Olig's time as Project Assistant, performance and discipline issues arose and all personnel actions were taken within the boundaries of the enclave, primarily at the Engineering Department offices in Mammoth Hot Springs.  Id., at ¶¶ 24-27.  When Olig resigned as Project Assistant in April of 2010, he hand delivered his letter of resignation to the Director of Engineering at Mammoth Hot Springs.  Id., at ¶ 28.  Finally, Xanterra counters Olig's claim that 15% of his working hours were spent outside the enclave by noting that only three of the 837 structures it manages are located outside of the enclave.  Id., at ¶¶ 6, 16.

    With respect to the claim that Wickham intentionally inflicted severe

emotional distress on Olig through a hostile work environment after his demotion, Wickham avers that almost all of their interactions occurred at the offices in Mammoth Hot Springs and rarely in the field.  Id., at ¶¶ 22-23.

Considering Olig's claims in light of the facts supplied by Xanterra, and without any evidence that Xanterra committed the alleged torts outside the enclave, the only possible conclusion is that Olig's claims arose within the federal enclave of Yellowstone National Park.  Xanterra properly removed to this Court. Olig's motion to remand should therefore be denied.

### III.   XANTERRA'S MOTION TO DISMISS

Under Rule 12(d) Fed.R.Civ.P., if the Court considers matters outside the pleadings in ruling on Xanterra's Rule 12(b)(6) Fed.R.Civ.P. motion to dismiss, it must convert the motion to a Rule 56 motion for summary judgment after giving the parties "a reasonable opportunity to present all the material that is pertinent to the motion."  On June 21, 2013, the Court gave actual notice that it would be converting Xanterra's motion to a motion for summary judgment and that any additional material must be filed by July 3, 2013.  CD 37.  Olig responded by updating his affidavit with one additional averment and one additional exhibit (CD 38), which have been taken into consideration.

Rule 56(a) Fed.R.Civ.P. requires that summary judgment be granted if there

are no genuine disputes as to any material fact and the movant is entitled to

judgment as a matter of law.  An issue is "genuine" only if there is a sufficient

evidentiary basis on which a reasonable fact finder could find for the nonmoving

party and a dispute is "material" only if it could affect the outcome of the suit

under the governing law.  Anderson, v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  On summary judgment, the evidence must be viewed in the light most

favorable to the non-moving party.  In re Barboza, 545  F.3d 702, 707 (9th Cir.

2008)  The court should not weigh the evidence and determine the truth of the

matter, but determine whether there is a genuine issue for trial.  Anderson, 477

U.S. at 249.

Xanterra's basis for dismissal is that all of Olig's claims are preempted by

the federal enclave doctrine.  Having already established that Yellowstone

National Park is a federal enclave and that the federal enclave doctrine is

applicable because Olig's claims arise from his employment in Yellowstone,

supra, the only question is whether the federal enclave doctrine precludes Olig's

claims.  By failing to argue otherwise his briefs, Olig has conceded that the federal

enclave doctrine defeats all of his claims.

The federal enclave doctrine arose from Article I, Section 8, Clause 17 of

the United States Constitution, which gives Congress the power to exercise

exclusive legislation over all places purchased by the consent of the relevant state legislature.  <u>Stiefel</u>, 497 F.Supp.2d at 1147.  Under the doctrine, state laws existing at time of surrender of sovereignty continue until they are abrogated by Congress, unless they are inconsistent with the laws of the United States or with the governmental use for which the property was acquired.  <u>Stiefel</u>, 497 F.Supp.2d at 1147.  In such cases, existing state law becomes federal law.  <u>Id.</u>  And more importantly for the instant case, only state laws in effect at time when jurisdiction is transferred continue.  <u>Id.</u>  Subsequently enacted state laws have no effect in the enclave unless they were adopted by Congress or the state expressly reserved jurisdiction over such matters.  <u>Id.</u>

On February 14, 1891, the State of Montana "ceded to the United States exclusive jurisdiction over and with respect to all lands within the state which were or might be embraced within the Yellowstone National Park, … reserving only concurrent jurisdiction for the execution of process, civil and criminal, lawfully issued by the courts of the state."  <u>Yellowstone Park Transp. Co.</u>, 31 F.2d at 645, <u>citing</u> 1891 Mont. Laws 262.  From this language, and there being no authority to the contrary, the Court concludes Montana did not reserve legislative jurisdiction over Yellowstone.  Therefore, Montana law existing as of 1891 applies.  <u>See Merritt v. Akima Corporation</u>, 273 M.F.R. 273, 276 (D.Mont. 2003).

13

Montana's Wrongful Discharge from Employment Act, under which Counts I and II are brought, was enacted in 1987.  Id., citing Mont. Code Ann. § 39-2-901. Accordingly, Counts I and II are barred as a matter of law by the federal enclave doctrine.[6]  Id.

Similarly, Montana only "tacitly recognized" a causes of action for intentional infliction of emotional distress in 1992.  Sacco v. High Country Independent Press, Inc., 896 P.2d 411, 427 (Mont. 1995), citing Foster v. Albertsons, Inc., 835 P.2d 720, 728 (Mont. 1992); see also Doohan v. Bigfork School Dist. No. 38, Bigfork, Mont., 805 P.2d 1354, 1362 (Mont. 1991), overruled by Sacco, 896 P.2d at 429 (the Montana Supreme Court has "not yet dealt with a case which merits recognition of a separate cause of action for the intentional infliction of emotional distress.").  And to the extent Olig claims Count III alleges negligent infliction of emotional distress, Montana did not create elements for such a tort until 1983.  Versland v. Caron Transport, 671 P.2d 583, 588 (Mont. 1983) overruled by Sacco, 896 P.2d at 429.  Accordingly, Count III is also

─────────────────────

[6]Although he makes no mention of Wyoming law in any filings with this Court, because Mammoth Hot Springs and most of Yellowstone lies within Wyoming, the Court also notes that the result would be the same under Wyoming law.  This is because (1) Wyoming law presumes employment to be at-will unless a contract clearly states otherwise and (2) at-will employment may be terminated by the employer at any time with no legal consequence.  Preston v. Marathon Oil Co., 277 P.3d 81, 85 (Wyo. 2012).

precluded as a matter of law by the federal enclave doctrine.[7]

Finally, Olig also pleads a cause of action for punitive damages, also named as Count III.  CD 5, p. 4.  But there can be no award of punitive damages without an award of compensatory damages.  <u>Jacobsen v. Allstate Ins. Co.</u>, 215 P.3d 649, 664 (Mont. 2009).  Having concluded that all of Olig's claims fail as a matter of law, the second Count III, alleging punitive damages, must also fail.

## IV.   CONCLUSION

It is **RECOMMENDED:**

1.  Olig's Motion to Remand (CD 15) should be denied because Xanterra properly removed to this Court based on federal question jurisdiction through the federal enclave doctrine.

2.  Xanterra's Motion to Dismiss (CD 6) should be converted to a Rule 56 Fed.R.Civ.P. motion for summary judgment and granted because Olig's state-law claims are precluded by the federal enclave doctrine.

3.  Xanterra's Motion for Judicial Notice (CD 8) should be denied as moot.

4.  The Clerk of Court should be directed to close this matter and enter

---

[7]If Olig were to claim Count III arises under Wyoming law, the result would be the same since Wyoming did not recognize the torts of negligent or intentional infliction of emotional distress until 1986.  <u>Gates v. Richardson</u>, 719 P.2d 193, 198 (Wyo. 1986) (negligent infliction of emotional distress); <u>Leithead v. Am. Colloid Co.</u>, 721 P.2d 1059, 1056 (Wyo. 1986) (intentional infliction of emotional distress).

judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

If either party files objections, they must itemize each factual finding to which objection is made and identify the evidence in the record he relies on to contradict that finding.  In addition, he must itemize each recommendation to which objection is made and set forth the authority he relies on to contradict that recommendation.

Failure to assert a relevant fact or argument in objections to these Findings and Recommendations may preclude that party from relying on that fact or argument at a later stage of the proceeding.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in

part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 30th day of July, 2013.

 /s/ Keith Strong
Keith Strong
United States Magistrate Judge